## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IN RE SEARCH OF ) | |
| ) | No.  1:23-mj-00241-JCN |
| A 2016 FORD EXPLORER WITH ) | |
| MAINE LICENSE PLATE 3575ZN ) | UNDER SEAL |
| VIN 1FM5K8GT5GGB70351 ) | |

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR A SEARCH WARRANT

I, Elisa G. Bernazzani, being duly sworn, state as follows:

INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation, and have been so employed since July 2008. Since July 2011, I have been assigned to the Counterintelligence Division at the Washington Field Office. As a Special Agent, I am responsible for investigations involving espionage, illegal agents of foreign powers, media leaks of classified or national defense information, and the unauthorized disclosure of classified or national defense information.

2.      Based on my experience and training, I am familiar with efforts used to unlawfully collect and disseminate sensitive government information, including national defense information ("NDI"). These efforts include, but are not limited to, the identification of a source with access to NDI, and the development and establishment of a relationship, recruitment, and the handling of the source. The use of wire/voice communications using commercially available and/or clandestine communication methods are often deployed to trigger meetings and/or transmit the NDI, while attempting to mask the relationship and illicit activities.

3. For the reasons that follow, I respectfully submit that there is probable cause to believe that Dale B. Bendler, having had access to classified systems due to his prior employment, conducted searches outside the scope of his official duties for certain classified and NDI and unlawfully disclosed that information to person(s) not entitled to receive it, in violation of 18 U.S.C. § 793(d) (having lawful possession of national defense information and communicating, delivering, or transmitting it) and 18 U.S.C. § 793(e) (having unauthorized possession of national defense information and communicating, delivering, or transmitting it). I also submit that there is probable cause to believe that Bendler lied to federal investigators about these unauthorized disclosures in violation of 18 U.S.C. § 1001 (false statements).

4. This affidavit supports the application for a warrant to search Bendler's 2016 **Ford Explorer,** as further described in Attachment A, to recover equipment that was previously installed in the **Ford Explorer** pursuant to an Order under 18 U.S.C. §§ 2510-22 that authorized the interception of oral communications (the "Title III Order") and an Order under Rule 41(b) of the Federal Rules of Criminal Procedure and the All Writs Act, 28 U.S.C. § 1651, that authorized the monitoring and recording of visual, non-verbal conduct and activities by means of video surveillance (commonly referred to as closed circuit television) (the "CCTV Order"). Both the Title III and CCTV Orders were entered in the Eastern District of Virginia. As discussed below, I respectfully submit there is probable cause to believe that Bendler violated 18 U.S.C. §§ 793 and 1001 and that there is probable cause to search the **Ford Explorer** to recover the items listed in Attachment B because such items constitute evidence of Bendler's crimes. Specifically, such items were used to obtain incriminating statements made by Bendler and may authenticate the oral communications of Bendler that were

intercepted and the visual, non-verbal conduct and activities that were recorded regarding Bendler's criminal conduct.

5. The statements contained in this affidavit are based on my own observations, document reviews, and reliable information provided to me by other law enforcement officials.

RELEVANT LAW

6. Under 18 U.S.C. § 793(d), "Whoever, lawfully having possession of, access to, control over, or being entrusted with any document … relating to the national defense or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted or attempts to" do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it" shall be guilty of an offense.

7. Under 18 U.S.C. § 793(e), "Whoever having unauthorized possession of, access to, or control over any document … or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it" shall be guilty of an offense.

8. Under Executive Order 13526, information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States Government; (2) falls within one or more of the categories set forth in the Executive Order [Top Secret, Secret, and Confidential]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

9. Where such unauthorized disclosure could reasonably result in damage to the national security, the information shall be classified as "Confidential" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in serious damage to the national security, the information shall be classified as "Secret" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, the information shall be classified as "Top Secret" and must be properly safeguarded. "NOFORN" is a dissemination marking that means that absent permission from the originating authority, such information should not be released to a foreign government, foreign national, foreign organization, or non-U.S. citizen.

10. Classified information of any designation may be shared only with persons determined by an appropriate United States Government official to be eligible for access, and who possess a "need to know." Among other requirements, for a person to obtain a security clearance allowing that person access to classified United States Government information, that person is required to and must agree to properly protect classified information by not disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations. If a person

is not eligible to receive classified information, classified information may not be disclosed to that person. For a foreign government to receive access to classified information, the originating United States agency must determine that such release is appropriate.

11. Confirming that a fact is or is not classified, is itself a classified fact. Such confirmation may not be given to a person who is not eligible to receive classified information.

12. Pursuant to Executive Order 13526, classified information contained on automated information systems, including networks and telecommunications systems, that collect, create, communicate, compute, disseminate, process, or store classified information must be maintained in a manner that: (1) prevents access by unauthorized persons; and (2) ensures the integrity of the information.

13. 32 C.F.R. Parts 2001 and 2003 regulate the handling of classified information. Specifically, 32 C.F.R. § 2001.43, titled "Storage," regulates the physical protection of classified information. This section prescribes that Secret and Top Secret information "shall be stored in a GSA-approved security container, a vault built to Federal Standard (FHD STD) 832, or an open storage area constructed in accordance with § 2001.53." It also requires periodic inspection of the container and the use of an Intrusion Detection System, among other things.

14. Under 18 U.S.C. § 1001, it is a crime to knowingly and willfully make "any materially false, fictitious, or fraudulent statement or representation" in "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."

STATEMENT OF PROBABLE CAUSE

15. As described below, the FBI is investigating unauthorized disclosure(s) of classified and national defense information to unauthorized individuals. On or about September 19, 2019, a U.S. Government Agency reported to the FBI that one of its then-current contractors, Dale B. Bendler, was conducting searches of the U.S. Government Agency's classified databases for information that was outside the scope of his official duties.

16. Bendler was an employee of the U.S. Government Agency, starting in or about October 1983 until in or about March 2014, and held a Top Secret//Sensitive Compartmented Information ("TS//SCI") security clearance. From May 2014 until September 2020, Bendler was a contractor for the U.S. Government Agency, working out of an office location in the Eastern District of Virginia, and held a TS//SCI security clearance. Bendler's contract work focused on counterterrorism issues. Bendler resided in the Eastern District of Virginia until late 2022.

17. Over his many years of holding a U.S. government security clearance, Bendler received training regarding classified NDI, including the definitions of classified information, the levels of classification, as well as the proper handling, marking, transportation, and storage of classified materials. As part of being granted a security clearance, Bendler was trained that classified information should only be accessed by those with the "need to know" the information for the performance of their job duties. Bendler also received training on his duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements. Bendler's training also included the fact that the unauthorized removal and retention of classified materials, the transportation and storage of

classified materials in unauthorized locations, or the unauthorized disclosure of those materials, could result in damage to the national security and result in criminal prosecution.

18.     To date, the investigation has revealed that Bendler conducted searches of the U.S. Government Agency's classified databases for information that was outside the scope of his official duties before then communicating about that information with individual(s) not authorized to receive it over encrypted applications on his iPhone from his **Ford Explorer**.

19.     On August 10, 2020, the FBI obtained the Title III Order (1:20-EC-13) for the interception of oral communications and the CCTV Order (1:20-ES-11) for closed circuit television in the **Ford Explorer** from District Judge Rossie D. Alston, Jr. in the Eastern District of Virginia, in order to capture Bendler's communications and non-verbal conduct while he spoke in the **Ford Explorer** over encrypted applications' phone call functions. Both orders authorized the FBI to "enter the [**Ford Explorer**] surreptitiously, covertly, and by breaking and entering, if necessary, in order to install, maintain, and remove" the surveillance equipment. The Title III Order also ordered that "[e]ach surreptitious entry will occur in the Eastern District of Virginia."

20.     On August 10, 2020, the FBI surreptitiously accessed Bendler's **Ford Explorer** and installed equipment pursuant to the Title III Order to intercept Bendler's oral communications and pursuant to the CCTV Order to record Bendler's visual, non-verbal conduct. From August 10 to September 9, 2020, during the 30 days of authorized interception and collection pursuant to the aforementioned orders, the FBI obtained evidence of Bendler's transmission of classified information to an individual not authorized to receive it.

21.     Specifically, on August 26 and 27 of 2020, Bendler was intercepted by the oral bug in the **Ford Explorer** disclosing classified information to an individual ("Individual 1"). As described further in the previously authorized search warrants, Individual 1 is the Chief Executive Officer of a U.S. company that Bendler was in frequent communication with via email, cellular telephone, and encrypted messages during the summer of 2020. Individual 1 was not authorized to receive the classified information. An original classification authority for U.S. Government Agency reviewed a transcript of Bendler's August 26 and 27, 2020 intercepted conversations with Individual 1 and concluded that the conversations contained information classified at the SECRET/NOFORN level. At no time did Bendler have authorization to disclose this information to Individual 1.

22.     On September 4, 2020, search warrants were issued in the Eastern District of Virginia to search, among other things, Bendler's Virginia residence (No. 1:20-SW-1096), the **Ford Explorer** (No. 1:20-SW-1097), and Bendler's person (No. 1:20-SW-1102). These search warrants and the supporting affidavit are incorporated herein and are attached as Exhibit A for reference.

23.     On September 8, 2020, the FBI executed those searches and voluntarily interviewed Bendler. In that interview, Bendler denied disclosing classified information to any individual not authorized to receive it. Based on the communications captured pursuant to the Title III Order, however, I believe that Bendler's statement is false.

24.     Shortly after the FBI's interview of Bendler in September 2020, Bendler's security clearance was revoked, and the U.S. Government Agency terminated his employment.

25. On September 14, 2020, U.S. District Judge Rossie D. Alston, Jr., upon the Government's motion, entered an order postponing the notification requirements of 18 U.S.C. § 2518(d) to all parties intercepted pursuant to the Title III and CCTV Orders until further order of the court (Nos. 1:20-ES-11, 1:20-EC-13).

26. Since September 2020, the FBI has been unable to access the **Ford Explorer** and uninstall the equipment without creating a significant risk that Bendler would be alerted of the ongoing investigative activities.

27. In about February 2023, the FBI confirmed via open-source records and physical surveillance that Bendler resided at 951 Brickell Avenue, Apt. 3611, Miami, FL 33131.

28. In about July 2023 and August 2023, the FBI confirmed via public records that Bendler transferred the title of the **Ford Explorer** with VIN 1FM5K8GT5GGB70351 to his son, Travis Bendler. According to public records, the **Ford Explorer** is now registered to Travis Bendler with Maine license plate 3575ZN at PO Box 9042, Waterville, ME 04901.

29. In about July 2023 and August 2023, the FBI confirmed via physical surveillance that the **Ford Explorer** was located in a parking lot at Colby College in Waterville, Maine. Open-source records confirm that Travis Bendler is a rising sophomore at Colby College.

30. In July 2023, the FBI confirmed with the Colby College Director of Security that Travis Bendler obtained a parking permit to park the **Ford Explorer** at a college campus parking lot over the summer. According to the parking permit, Travis Bendler planned to return to Colby College's campus on August 31, 2023.

31. The FBI seeks to retrieve the aforementioned TIII interception and CCTV collection equipment from the **Ford Explorer**, which may be evidence of the transmission of national defense information and false statements in order to authenticate the recordings that were captured during the 30 days of authorized interception and collection.

## REQUEST FOR DELAYED NOTICE

32. Pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3103a, I seek a warrant for the search of the **Ford Explorer**, as more fully described in Attachment A, to search for and seize items, as more fully described in Attachment B.

33. Pursuant to Federal Rules of Criminal Procedure 41(f)(2)(c), (f)(3), and 18 U.S.C. § 3103a, I also request permission to delay service of the warrant for a period of 120 days after the date of execution of the search. Based on my training and experience and my investigation of this matter, I believe that reasonable cause exists to delay service of the warrant for a period of 120 days because immediate notification of the warrant is likely to have the adverse result of placing the investigation in serious jeopardy.

34. Specifically, this criminal investigation is ongoing, and neither public nor known to all of the individuals associated with the investigation. Bendler is aware that his home was searched in 2020 and that the FBI was investigating him shortly before the U.S. Government Agency terminated him. His counsel also contacted the government in 2023 to ask for the return of Bendler's property and was told that he should not assume that the investigation was closed. Bendler is not, however, aware of the details or extent of the investigation, including its current

investigative direction and activities. Bendler also does not know that the FBI installed court-authorized surveillance and recording equipment in his **Ford Explorer** during the investigation and that that equipment remains in the vehicle. Alerting Bendler to the ongoing investigative activity and the specific investigative techniques used to investigate his criminal conduct is likely to cause Bendler and his associates to take steps to avoid detection, to change his methods of operation and communication, to destroy evidence, and to otherwise disguise his activities, past and present. This would seriously jeopardize the investigation and make it even more difficult for law enforcement to determine the full scope of the criminal conduct of Bendler and any associates.

35. I also note that pursuant to District Judge Rossie D. Alston, Jr.'s prior order, the notification requirements of 18 U.S.C. § 2518(d) concerning the Title III and CCTV Orders have been postponed until further order from the district court in the Eastern District of Virginia.

36. This investigation is ongoing and expected to take at least a few more months to conclude. Although the requested warrant is expected to yield significant evidence, contraband, fruits, and/or instrumentalities of criminal conduct, subsequent investigation may be necessary to reveal the full scope of the criminal conduct, and gather additional evidence needed for any criminal prosecution.

37. For the foregoing reasons, I request permission to delay service of the warrant for a period of 120 days after the date of execution of the search.

## CONCLUSION

38. For the reasons above, I submit that there is probable cause to believe that Bendler has committed violations of U.S.C. § 793(d) (having lawful possession of national defense information and communicating, delivering, or transmitting it), 18 U.S.C. § 793(e) (having unauthorized possession of national defense information and communicating, delivering, or transmitting it), and 18 U.S.C. § 1001 (false statements) and that fruits, evidence, and instrumentalities of these violations, that is, the items listed in Attachment B, will be found in Bendler's black 2016 **Ford Explorer,** as further described in Attachment A. Additionally, there is reasonable cause to delay notice of the requested warrant required under Rule 41 and 18 U.S.C. § 3103a for a period of 120 days after execution of the search.

_____
Elisa G. Bernazzani
Special Agent
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Aug 24 2023

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title